UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MANHATTAN COURTHOUSE

| | |
|---|---|
| Aimen Halim, individually and on behalf of all others similarly situated,<br>Plaintiff,<br>- against -<br>Kind LLC,<br>Defendant | 1:22-cv-10979<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Kind LLC ("Defendant") manufactures, markets, and sells bags of granola sold intended for consumption as snacks in varieties including cinnamon oat promoted as "High in Fiber" ("Product").



2. Consumers are increasingly aware of the health benefits of consuming fiber.

3. These include improving gut health, lowering elevated LDL-cholesterol, reducing the risk of excessive weight gain and obesity, and decreasing incidences of cardiovascular disease ("CVD"), coronary heart disease ("CHD"), cancers, stroke and diabetes.

4. While companies seek to promote the fiber content of their products, they are required to do so in a way that it is not misleading.

5. To prevent companies from using an array of terms and figures to mislead the public, the Food and Drug Administration ("FDA") established regulations for nutrient content claims, adopted by all fifty states, that set limits on how they can tout the nutrient content of their foods.

6. These nutrient content claims are generally, but not always, required to be based on the reference amount customarily consumed ("RACC").

7. The statement of "High in Fiber" is an expressed nutrient content claim because it "is a[ny] direct statement about the level (or range) of [fiber] in the [Product]." 21 C.F.R. § 101.13(b)(1).

8. Where a food is described as high in fiber, it must contain twenty percent or more of the recommended daily intake ("RDI"). 21 C.F.R. § 101.54(b)(1).

9. However, based on the Product's correct serving size of 30 grams, it is not high in fiber because the four grams of fiber shown in the "Snack" column is only fourteen percent of the percent daily value. 21 C.F.R. § 101.12(b).




10. However, the Nutrition Facts show the Product's serving size is 65 grams or two-thirds of a cup, shown above the bold line and in the second column designated as "Bowl."

11. This serving size is derived based on the RACC of 60 grams for breakfast cereals.

12. While the Product can be eaten as cereal, it is not a cereal nor sold with other cereals but with snacks.

13. Only when the Product is deemed a cereal is the "High in Fiber" claim accurate, shown in the second column with nine grams of fiber, exceeding the twenty-percent daily value.

14. Where claims about a food's nutrient content are made when nutrition information is presented in two columns, it is required to conspicuously disclose which column is the basis for the claim. 21 C.F.R. § 101.9(b)(12)(ii).

15. That "[A]ll nutrition information [above] is based on a 65g serving size" is at the

bottom of the label in small text which is difficult to read







16. There are several signals that Defendant does not really believe its Product is a cereal.

17. First, if Defendant believed the Product was a cereal, it would not have to disclose the basis for the high in fiber claim at the bottom of the package because the nutrient that is the subject of the claim, fiber, meets the criteria for a "high" claim based on the reference amount of 60 g. 21 C.F.R. § 101.9(b)(12)(ii)

18. Assuming the Product is cereal with a RACC of 60 g, it would still have 8 g fiber which exceeds the twenty-percent daily value to make a high fiber claim.

19. Second, though the second column uses the cereal RACC to arrive at the serving size of 65 g and describes this amount as a "Bowl," it fails to include a column for added milk, even though the back label shows a picture of the Product being consumed "[W]ith milk[!]." 21 C.F.R. § 101.9(h)(4).




20. As a result of the false and misleading representations, the Product is sold at a premium price, 5.99 for 312 g, excluding tax and sales.

<u>Jurisdiction and Venue</u>

21. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

22. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

23. Plaintiff is a citizen of Illinois.

24. Defendant is a Delaware limited liability company with a principal place of business in New York, New York, New York County.

25. Defendant's managing member is a citizen of New York.

26. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

27. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here from thousands of stores and over the internet, in the States Plaintiff seeks to represent.

28. Venue is in this District with assignment to the Manhattan Courthouse because Defendant's principal place of business is in this District, which is where the decisions related to the labeling and marketing of the Product were made.

Parties

29. Plaintiff Aimen Halim is a citizen of Chicago, Cook County, Illinois.

30. Defendant is a Delaware limited liability company with a principal place of business in New York, New York, New York County.

31. Defendant is a leading seller of healthy snacks, known for its focus on nutrition.

32. Plaintiff purchased the Product at stores including but not necessarily limited to Jewel-Osco, 4042 W Foster Ave, Chicago, Illinois 60630 in the fall and/or winter of 2022, and/or among other times, at or around the above-referenced price.

33. Plaintiff did not think he was buying cereal but a snack.

34. Like many Americans, Plaintiff seeks to consume more fiber for reasons including its dietary benefits.

35. Plaintiff saw the claim the Product was "High in Fiber."

36. Plaintiff expected prominent label statements would be based on consuming the Product as a snack.

37. Plaintiff did not and could not see the small print at the bottom of the label which purported to tell purchasers that its claims about being high in fiber were only accurate if the Product was consumed as a cereal.

38. Plaintiff paid more for the Product than he would have had he known the representations and omissions were false and misleading, or would not have purchased it.

39. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

Class Allegations

40. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois and New York Class:** All persons in the State of Illinois and New York who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of South Dakota, Wyoming, Idaho, Alaska, Iowa, Mississippi, Arkansas, South Carolina and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

41. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

42. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

43. Plaintiff is an adequate representative because his interests do not conflict with other members.

44. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

45. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

46. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, *et seq.* and
New York General Business Law ("GBL") §§ 349

47. Plaintiff incorporates by reference all preceding paragraphs.

48. Plaintiff expected the Product would be high in fiber based on its consumption as a snack, not a cereal.

49. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts
(Consumer Fraud Multi-State Class)

50. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

51. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

52. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

53. The Product was manufactured, identified, marketed, and sold by Defendant and

expressly and impliedly warranted to Plaintiff that it would be high in fiber based on its consumption as a snack, not a cereal.

54. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

55. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet their needs and desires, which was the consumption of foods that were high in fiber.

56. The representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it would be high in fiber based on its consumption as a snack, not a cereal.

57. Defendant's representations affirmed and promised that the Product would be high in fiber based on its consumption as a snack, not a cereal.

58. Defendant described the Product so Plaintiff believed it would be high in fiber based on its consumption as a snack, not a cereal, which became part of the basis of the bargain that it would conform to its affirmations and promises.

59. Defendant had a duty to disclose and/or provide non-deceptive promises, descriptions and marketing of the Product.

60. This duty is based on Defendant's outsized role in the market for this type of product, a leading seller of healthy snacks.

61. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

62. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

63. Defendant received notice and should have been aware of these issues due to complaints by consumers and third-parties, including regulators and competitors, to its main offices and through online forums.

64. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

65. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it would be high in fiber based on its consumption as a snack, not a cereal.

66. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected that it would be high in fiber based on its consumption as a snack, not a cereal, and he relied on its skill and judgment to select or furnish such a suitable product.

Fraud

67. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it would be high in fiber based on its consumption as a snack, not a cereal.

68. Defendant's actions evince a detailed knowledge of the labeling regulations and that it knew it labeled the Product in a way that was not consistent with what was required.

Unjust Enrichment

69. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Certifying Plaintiff as representative and the undersigned as counsel for the classes;

2. Awarding monetary, statutory and/or punitive damages and interest;

3. Awarding costs and expenses, including reasonable attorney and expert fees; and

4. Other and further relief as the Court deems just and proper.

Dated: December 30, 2022

Respectfully submitted,

/s/ Spencer Sheehan

Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com