UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AIMEN HALIM, individually and on behalf of all others similarly situated,

                Plaintiff,

-v.-

KIND LLC,

                Defendant.

22 Civ. 10979 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

    Enticed by the promise of a nutritional snack, Plaintiff Aimen Halim purchased a bag of granola manufactured by Defendant KIND LLC. Among other nutritional benefits, the granola is promoted as being "high in fiber." Upon realizing, however, that the granola is only "high in fiber" when consumed as a "cereal" (*i.e.*, in a 2/3 cup serving), as opposed to as a "snack" (*i.e.*, in a 1/3 cup serving), Plaintiff filed this putative class action against Defendant for false advertising and related claims. According to Plaintiff, because granola is typically consumed as a snack and not as a cereal, Defendant's advertisement that the granola is "high in fiber" is misleading. Defendant moves to dismiss Plaintiff's claims pursuant to the Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court grants Defendant's motion to dismiss.

## BACKGROUND[1]

### A.    Factual Background

Defendant is a Delaware corporation with a principal place of business in New York; Plaintiff describes Defendant as "a leading seller of healthy snacks, known for its focus on nutrition." (FAC ¶¶ 32, 39). Among other products, Defendant manufactures, markets, and sells bags of granola. (*Id.* ¶ 1). Relevant to the instant case, Defendant's Health Grains granola (the "Product") is sold in 11-ounce (318-gram) bags in a variety of flavors. (*Id.* ¶ 28).

On at least one occasion in 2022, Plaintiff, who is an Illinois citizen, purchased the Product for "$5.99 (excluding tax and sales)" at a store in Chicago, Illinois. (FAC ¶¶ 28, 31, 40). In making his decision to purchase the Product over comparable products, Plaintiff purportedly relied on assertions made on the Product's label and packaging. (*See generally* FAC). Specifically, Plaintiff observed that the front of the package states that the Product is "HIGH IN FIBER." (FAC ¶ 1).

Fiber is a carbohydrate that can provide health benefits, including improving gut health, lowering elevated cholesterol, reducing the risk of excessive weight gain, and decreasing incidences of cardiovascular disease. (FAC ¶ 13). According to the Food & Drug Administration (the "FDA"), to be

---

[1]    This Opinion draws its facts from the First Amended Complaint (the "FAC" (Dkt. #20)), the well-pleaded allegations of which are taken as true for purposes of this Opinion. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). The Court also relies, as appropriate, on the Declaration of Keri Borders and the exhibit attached thereto ("Borders Decl., Ex. A" (Dkt. #23)), which are incorporated by reference in the Complaint. *See DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that on a motion to dismiss, courts may consider documents incorporated by reference and documents integral to a complaint).

labeled "high in fiber" a product must contain at least 20% of the recommended daily intake of fiber per serving when consumed in the recommended serving size. 21 C.F.R. § 101.54(b)(1). (*Id.* ¶ 11). A product's serving size is based on the FDA's standardized Reference Amount Customarily Consumed (the "RACC"). (Def. Br. 5 n.2). The RACC attempts to reflect the average amount of a product that people typically consume at one time. (*Id.*). In this case, the Product's serving size is based on the customary serving size of cereal, which is 60 grams (or approximately 2/3 cup). (FAC ¶¶ 21, 22). The Product is eligible to be labeled "high in fiber" because consumption of it in the recommended serving size of 65 grams provides at least 20% (in this case 32%) of the recommended daily intake of fiber. (*Id.* ¶ 11).

    Plaintiff contends, however, that granola is most often considered a snack, not a cereal. He alleges that "the majority of consumers … consume [granola] not as a traditional cereal in milk, but as a snack," based on product reviews left on websites where granola is purchased, such as Amazon, Walmart, and Target. (FAC ¶¶ 25-27). Plaintiff further pleads that the Product "is marketed as a snack" because of "[i] its placement in grocery and other stores and [ii] the lack of any indicia of cereal on the front label, such as a bowl or milk." (*Id.* ¶ 9). The FDA's recommended snack serving size is 30 grams (or approximately 1/3 cup). 30 grams of the Product contains only 14% of the recommended daily intake of fiber, not the 20% required by the FDA to make a "high in fiber" nutrient claim. (*Id.* ¶¶ 12, 14). Accordingly, Plaintiff argues that

3

the "high in fiber" statement is misleading because consumers will equate it with the smaller "snack" serving size.

By way of illustration, the front of the Product's packaging states that the granola is "HIGH IN FIBER" and contains both "7g FAT PER SERVING" and




*Front of package*                                              *Back of package*

"100% WHOLE GRAINS / 39g PER SERVING." (FAC ¶ 1). The front of the packaging also states that "[a]ll nutrient information above is based on a 65g serving size." (*Id.*).

4

The back of the package reiterates that the product is "HIGH IN FIBER" and that "[a]ll nutrition information is based on a 65g serving size." (FAC ¶ 11). The back of the package also states that the Product is "the perfect snack to sprinkle over yogurt, enjoy by the spoonful or grab by the handful." (*Id.* ¶ 23). Beneath the statement are illustrations of the granola being enjoyed "[o]n-the-go," "over yogurt," or "with milk." (*Id.*). Also on back of the package is an FDA-mandated a nutrition facts panel, which states that the recommended serving size is "2/3 cup (65g)." (*Id.* ¶ 11). The panel lists the nutritional information for both the "bowl" and the "snack" serving sizes in two columns, with the "snack"-size values to the left and the "bowl"-size values to the right. Among other nutritional values listed, the panel states that the "bowl" or 2/3 cup serving size provides 32% of the recommended daily value of fiber, and the "snack" or 1/3 cup serving size provides 14%. (*Id.*).

Plaintiff claims that, had he known that the Product was not actually "high in fiber" when consumed in the snack-sized portion, he would not have paid a price premium for it. (FAC ¶ 28). He brings this suit on behalf of the putative class of Illinois purchasers of the Product.

B.  **Procedural Background**

Plaintiff initiated the instant lawsuit by filing a complaint on December 30, 2022. (Dkt. #1). On May 1, 2023, Defendant filed a letter motion seeking leave to file a motion to dismiss the complaint. (Dkt. #16). During a pre-motion conference on May 18, 2023, the Court indicated that it would allow Plaintiff to file an amended complaint and set a briefing schedule

5

for the Defendant's anticipated motion to dismiss.  On June 8, 2023, Plaintiff filed his amended complaint.  (Dkt. #20).  Defendant filed its motion to dismiss the amended complaint and opening submission on July 14, 2023.  ("Def. Br." (Dkt. 22)).  On August 16, 2023, Plaintiff filed an opposition to Defendant's motion to dismiss.  ("Pl. Opp." (Dkt. #27)).  Defendant filed its reply on August 31, 2023.  ("Def. Reply" (Dkt. #28)).

## DISCUSSION

### A.  Applicable Law

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "draw all reasonable inferences in [p]laintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 679 (2009).  "In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken.'"  *Hu* v. *City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) (quoting *Samuels* v. *Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993)).

A complaint will survive a motion to dismiss if it alleges "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of

specifics, it does require enough facts to nudge plaintiff's claims across the line from conceivable to plausible." (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 570)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**B.   Analysis**

In his amended complaint, Plaintiff brings two sets of claims. *First*, Plaintiff brings false advertising claims under the Illinois Consumer Fraud and Deceptive Businesses Practices Act (the "ICFA") and the New York General Business Law (the "GBL") alleging that the Product's "high in fiber" label is misleading because it is "only accurate based on [the Product's] consumption as a cereal." (FAC ¶ 10). *Second*, Plaintiff brings a related claim for breach of express warranty.[2] The Court considers each set of claims in turn.

**1.   The Court Dismisses Plaintiff's GBL and ICFA Claims**

As an initial matter, Plaintiff lacks standing to bring a GBL claim. Plaintiff does not allege that he purchased Defendant's products in New York, rendering the GBL inapplicable. Accordingly, those claims are dismissed. *See*

---

[2]   In his amended complaint, Plaintiff also raised claims for breaches of implied warranty. (FAC ¶¶ 57, 58). However, Plaintiff expressly withdrew those claims in his opposition submission. (Pl. Opp. 1 n.1). Accordingly, those claims are dismissed.

7

*Kaufman* v. *Sirius XM Radio, Inc.*, 474 F. App'x 5, 7 (2d Cir. 2012) (summary order) (citing *Goshen* v. *Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 325 (2002) ("[T]o qualify as a prohibited act under the statute, the deception of a consumer must occur in New York.")).  Even if Plaintiff did have standing, the same standards that apply to ICFA claims apply to GBL claims.  *See Mantikas* v. *Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018).  Because the Court ultimately dismisses Plaintiff's ICFA claims, it would also dismiss the GBL claims.

Defendant argues that Plaintiff's ICFA claim should be dismissed because Plaintiff failed to plausibly allege that Defendant's advertising is false or misleading.  (Def. Br. 8).  The Court agrees.  The ICFA "provides a remedy for 'unfair methods of competition and unfair or deceptive acts or practices' in specific commercial transactions." *Greenberger* v. *GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) (quoting 815 Ill. Comp. Stat. 505/2).  Specifically, the statute prohibits "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression or omission of any material fact."  815 Ill. Comp. Stat. 505/2.  To state a claim under the ICFA, a plaintiff must show: "[i] a deceptive act or practice by defendant; [ii] defendant's intent that plaintiff rely on the deception; and [iii] that the deception occurred in the course of conduct involving trade and commerce." *Wigod* v. *Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012).

8

To satisfy the first element, a plaintiff must plead facts plausibly showing a deceptive act or practice. Under the ICFA, "a statement is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Bober* v. *Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). In deciding whether a statement is deceptive, courts look at the "totality of the information made available to the plaintiff." *Davis* v. *G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005). As such, allegedly deceptive labels must be viewed in context; even where a statement might be deceptive in isolation, it may be permissible in conjunction with clarifying language. *In re: 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 922 (N.D. Ill. 2017). "Courts apply a 'reasonable consumer' standard in evaluating the likelihood of deception." *Stemm* v. *Tootsie Roll Indus., Inc.*, 374 F. Supp. 3d 734, 740 (N.D. Ill. 2019) (citing *Mullins* v. *Direct Digital, LLC*, 795 F.3d 654, 673 (7th Cir. 2015)). The reasonable consumer test requires "a probability that a significant portion of the general consuming public … acting reasonably in the circumstances, could be misled." *In re: 100% Grated Parmesan*, 275 F. Supp. 3d at 921.

Although ICFA claims often involve disputed questions of fact not suitable for determination on a motion to dismiss, a court may dismiss the complaint if the challenged statement was not misleading as a matter of law. *See Bober*, 246 F.3d at 938, 940 ("In determining whether the allegations in [the] complaint state [an ICFA] claim for relief that satisfies the requirements of Rule 12(b)(6), [the court must] ask whether the allegedly false and misleading

9

statements on which [the plaintiff] base[s] his [ICFA] claim can be read to create a likelihood of deception or to have the capacity to deceive.").

Here, Plaintiff cannot plausibly allege that Defendant's advertising was deceptive. Glaringly absent from the packaging is any representation that the Product is "high in fiber" when eaten as a snack. While statements that the Product is "the perfect snack" and can be eaten "on-the-go" may promote the belief that it can be consumed as a snack, based on "the totality of the information available," no reasonable consumer would construe these elements to be an affirmative representation that the nutritional information was based on a snack serving size. *Davis*, 396 F.3d at 884. To the contrary, the front of Product's packaging states that "[a]ll nutritional information" — including the "high in fiber" label — "is based on a 65g serving size." (FAC ¶¶ 1, 11). *See Floyd* v. *Pepperidge Farm, Inc.*, 581 F. Supp. 3d 1101, 1109 (S.D. Ill. 2022) (dismissing ICFA claim because there were "no untruths on the packing"); *see also Bober*, 246 F.3d at 938 (finding that statements claiming that drugs were different medications were not deceptive because "that claim [was] completely true").

To the extent Plaintiff found the statement on the front of the package "small" or "difficult to read" (FAC ¶17), the back of the package re-states that "all nutritional information is based on a 65g serving size," while the nutritional facts panel clearly identifies that the serving size is "2/3 cup (65 g)" (*id.* ¶ 11). The panel also explicitly states that the 65-gram serving contains 32% of the recommended daily value of fiber, while the smaller, snack-sized

portion provides 14%.  Indeed, the side-by-side comparison of the nutritional values for a "bowl" versus a "snack" sized portion makes it even easier for a consumer to ascertain the relative fiber content of both serving sizes.  *See Willard* v. *Tropicana Mfg. Co., Inc.*, 577 F. Supp. 3d 814, 831 (N.D. Ill. 2021) ("[I]n the absence of an affirmative misrepresentation on the front label, '[p]laintiffs and the general public are not free to ignore the ingredient list.'" (quoting *Cheslow* v. *Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 20 (N.D. Cal. 2020))); *see also Fuchs* v. *Menard, Inc.*, No. 17 Civ. 1752 (EEC), 2017 WL 4339821, at *5 (N.D. Ill. Sept. 29, 2017) (dismissing ICFA claim for lumber labeling in part because plaintiff had "direct and complete access to the information needed to determine the height and width of the lumber").  Accordingly, Plaintiff's ICFA claim is dismissed.

### 2. The Court Dismisses Plaintiff's Claim for Breach of Express Warranty

Plaintiff also brings an express warranty claim premised on the same theory as his ICFA claim.  (FAC ¶¶ 58-71).  Like false advertising claims, claims for breach of express warranty require allegations of an affirmation or promise that was breached.  *Corwin* v. *Conn. Valley Arms, Inc.*, 74 F. Supp. 3d 883, 891-92 (N.D. Ill. 2014).  Accordingly, because Plaintiff's theory of deception fails, his breach of express warranty claim also fails.  *See Wach* v. *Prairie Farms Dairy, Inc.*, No. 21 Civ. 2191 (EEB), 2022 WL 1591715, at *6 (N.D. Ill. May 19, 2022) (finding that plaintiff's breach of express warranty claims failed because it was "premised on the assertion that the product's labeling is false, deceptive, and misleading"); *see also Karlinski* v. *Costco Wholesale Corp.*, 616 F. Supp. 3d

753, 765 (N.D. Ill. 2022) (finding that because plaintiff's claim for breach of express warranty was premised on the same theory as his ICFA claim, his breach of express warranty claim "also fail[ed]"); *Galanis* v. *Starbucks Corp.*, No. 16 Civ. 4705 (TMD), 2016 WL 6037962, at *4 (N.D. Ill. Oct. 14, 2016) (dismissing plaintiff's express warranty claim because plaintiff failed to allege a misleading statement). Accordingly, the Court dismisses Plaintiff's express warranty claim.

In addition to the obvious deficiencies on the merits, there is an independent reason to dismiss Plaintiff's express warranty claim. Defendant raises the issue that Plaintiff failed to provide pre-suit notice. (Def. Br. 13). "[B]reach of express … warrant[y] require[s] that a seller be notified of the breach." *Rudy* v. *Family Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1161-63 (N.D. Ill. 2022). Under the Uniform Commercial Code, applicable in Illinois, a plaintiff must provide a defendant with notice of a breach of warranty "within a reasonable time after he discovers or should have discovered any breach." 810 ILCS 5/2-607(3)(a). Pre-suit notice is required unless the plaintiff can show that he or she suffered a personal injury or that the defendant had actual knowledge of the alleged defect. *Anthony* v. *Country Life Mfg., LLC*, 70 F. App'x 379, 384 (7th Cir. 2003) (unpublished decision) (citing *Connick* v. *Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 492 (Ill. Sup. Ct. 1996)).

Here, pre-suit notice was required because Plaintiff did not allege that he suffered a personal injury or that Defendant had actual knowledge of the alleged defect. (*See generally* FAC). Plaintiff acknowledges as much, but

12

contends that he did provide Defendant with the requisite notice "by filing this action." (Pl. Opp. 9). "Filing a complaint is not sufficient to provide notice of a breach of warranty under Illinois law." *Karlinski*, 616 F. Supp. 3d at 765. Accordingly, the Court dismisses Plaintiff's breach of express warranty claim for this independent reason.[3]

## CONCLUSION

Because Plaintiff has not stated a claim for false advertising or breach of express warranty, Defendant's motion to dismiss is GRANTED. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated: December 20, 2023
New York, New York

KATHERINE POLK FAILLA
United States District Judge

---

[3] Defendant also argues that Plaintiff's claim should be dismissed because he has not alleged privity between himself and Defendant. (Def. Br. 13). As the Court has already found that Plaintiff's breach of express warranty claim requires dismissal, it need not reach Defendant's argument.